UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL STEVEN MAY,

        Plaintiff,

                                       Civil Action 2:11-cv-0839
     v.                              Magistrate Judge Elizabeth P. Deavers

DOUG McGRATH, *et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Summary Judgment.  (ECF No. 21.)  Plaintiff filed his Response in Opposition to Defendants' Motion on December 4, 2012.  (ECF No. 26.)  Defendants filed their Reply on December 18, 2012.  (ECF No. 39.)  Plaintiff filed a Sur-Reply on January 8, 2013.  (ECF No. 43.)  Also before the Court is Defendants' Motion to Strike Plaintiff's Sur-Reply.  (ECF No. 48.)  Plaintiff filed his Response in Opposition to Defendants' Motion to Strike on January 15, 2013.  (ECF No. 49.)  Defendants filed their Reply on January 18, 2013.  (ECF No. 51.)  For the reasons that follow, Defendants' Motion to Strike is **DENIED**.  Defendants' Motion for Summary Judgment on Plaintiff's claims for false arrest and false imprisonment arising under federal and state law, excessive force arising under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, assault and battery arising under state law, malicious prosecution arising under federal and state law, abuse of process, civil conspiracy, failure to train or supervise, negligent infliction of emotional distress, and intentional infliction of emotional distress is **GRANTED**.  Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim for excessive force against Defendant West is **GRANTED**.  Defendants' Motion for Summary Judgment on

Plaintiff's Fourth Amendment claim for excessive force against Defendant McGrath is

**DENIED**.  Defendants' Motion for Summary Judgment on grounds of qualified immunity is

**DENIED**.  Defendants' Motion for Summary Judgment on the grounds of state-law absolute

immunity is **DENIED AS MOOT**.

## I. BACKGROUND

This action arises out of events leading up to Plaintiff's September 27, 2009 arrest.  The

parties' versions of events are disputed.

**A.      Plaintiff's Version of Events**

**1.      The Events Leading up to Plaintiff's Arrest**

Plaintiff admits that he had been drinking and taking excessive amounts of prescription

medication in the days leading up to his arrest.  (May Aff. 4, ECF No. 36-1.)  According to

Plaintiff, he was target shooting in his backyard in the early evening hours of September 27,

2009.  *Id.* at 1.  After shooting off approximately six rounds, he went inside and dozed off.

Unbeknownst to Plaintiff, his neighbor called the Sheriff's Office and reported that someone was

shooting a gun near her house.

When Plaintiff awoke from his short nap it was dark outside.  Plaintiff contends that he

walked outside to the garage to see if his wife's car was there.  *Id.* at 2.  While outside, he heard

two vehicles at the north end of his property, approximately 500 feet away, up his dark, winding

driveway.  The sound of vehicles alarmed Plaintiff because someone had broken into and

damaged his garage several months earlier.  Plaintiff went inside, retrieved and loaded his gun,

and walked toward the north end of his property.  *Id.*

According to Plaintiff, he heard car tires spinning as he made his way up the dark, long

driveway.  *Id.*  Plaintiff allegedly took his gun from his back pocket and yelled out for whoever was there to leave.  *Id.*  After getting no response, Plaintiff avers that he fired one round into the ground, barely missing his foot.  *Id.*  Plaintiff again yelled out for whoever was there to leave.  According to Plaintiff, he heard no response, so he fired another round into the ground.  *Id.*  Hearing nothing further, Plaintiff put his gun in his back pocket and continued toward the north end of his property.  (May Aff. 2, ECF No. 36-1.)  As he reached the clearing at the end of the driveway, Plaintiff saw two sheriff's cruisers on his property.  *Id.*

      Defendant officers McGrath and West yelled at Plaintiff, ordering him to get on the ground and put his hands behind his back.  *Id.*  Plaintiff avers that because he was depressed that night, he called out to Defendants to shoot him.  *Id.* at 3.  Plaintiff contends that as he got down on the ground, Defendant West ran up, handcuffed him, and asked him where the gun was.  Plaintiff told officers the gun was in his back pocket.  Defendant West retrieved the gun from Plaintiff's pants pocket.  According to Plaintiff, West secured the handcuffs so tightly that his wrists later had red rings and blisters around them.  *Id.* at 3.  At that time Defendant McGrath allegedly got on top of Plaintiff, lodging his knee in Plaintiff's back.  *Id.* at 3.  Plaintiff contends that McGrath's action caused him "incredible pain."  *Id.* at 3.  Plaintiff turned his head toward McGrath to ask him to remove his knee.  At that time, according to Plaintiff, McGrath's knee slid off Plaintiff's back, and McGrath struck Plaintiff in the head with a blunt object.  *Id.*  Plaintiff thought that the object was McGrath's gun.  Plaintiff contends that the blow knocked him unconscious.  *Id.*

### 2.    Plaintiff's Hospital and Jail Stays

Plaintiff avers that he resumed consciousness as Defendants McGrath and West were throwing him in the back of a police cruiser. *Id.* at 3.  The officers later allegedly grabbed Plaintiff from the car by his belt and shoulder and threw him into another cruiser, which Plaintiff later learned belonged to Deputy Walker.

According to Plaintiff, Deputy Walker drove him to the Sheriff's department. *Id.* Plaintiff contends that his head was bleeding as he sat in a chair in Defendant Sheriff Jenkins' office.  He purportedly told Defendant Jenkins, "Look what your men done to me." *Id.*  Sheriff Jenkins allegedly responded, "we'll see." *Id.*  Plaintiff avers that a sheriff's deputy cleaned his blood from the floor.  At some point thereafter, EMS personnel arrived, bandaged Plaintiff's head, and took him to Genesis Hospital.

Plaintiff contends that when he arrived at Genesis Hospital his left temple was swollen, bloody, and red. *Id.* at 4.  Due to Plaintiff being upset and depressed, a psychologist at the hospital admitted him to the Appalachian Behavioral Health Center, where he remained for two days. *Id.* at 3.  Professionals at Appalachian Behavioral Health photographed the injury to Plaintiff's head.  Plaintiff's wife avers that she witnessed the injury during a visit to the behavioral health center, which she described as a "big, puffed-up cut and knot" on the left side of his forehead.  (Marguerita May Aff. 8, ECF No. 36-1.)  Plaintiff's wife took Plaintiff's bloody shirt from the behavioral health center. *Id.*

Upon his release from the behavioral health center, a sheriff's deputy transported Plaintiff to the Southeast Regional Jail in Morgan County.  (May Aff. 3, ECF No. 36-1.)  Jail officials photographed the injuries to Plaintiff's head and wrists.  Plaintiff's wife contends that

when Plaintiff was released from jail a few days later, his head was "still swollen and [had] a pretty nice sized knot" on it. (Marguerita May Aff. 8, ECF No. 36-1.) At some point after being released from jail, Plaintiff went to Camden Clark Hospital due to stress. (May Dep. 63:18, ECF No. 20-1.) The record does not reveal how long Plaintiff remained at Camden Clark or what treatment he received.

### 3. Plaintiff's Lasting Injuries

According to Plaintiff, the actions of McGrath and West left him with injuries to his head and his wrists. Plaintiff's wife avers that when Plaintiff was released from jail both of his wrists were "scabbed up with rings around them." (Marguerita May Aff. 8, ECF No. 36-1.) To this day Plaintiff has a scar on his left temple, which he describes as having a shape of a "reverse 'L.'" (May Aff. 4, ECF No. 36-1.) Plaintiff and his doctor compared the scar to a magazine for the type of gun that Defendant McGrath carried the night of the incident. Plaintiff's doctor submitted a report and affidavit, in which he states that a magazine clip fits perfectly into the scar on Plaintiff's head. (Wikas Aff. 1, ECF No. 36-2.)

## B. Defendants' Version of Events

Defendants West and McGrath offer a different version of events surrounding Plaintiff's arrest. Defendants contend that they responded to a call from Plaintiff's neighbor that someone, whom the neighbor believed to be Plaintiff, was shooting a gun behind her house. (Mot. Ex. D, West Aff. 1, ECF No. 21.) As Defendant West was talking to the neighbor outside of her house, Plaintiff's wife pulled up in her vehicle. *Id.* According to West, Plaintiff's wife confirmed that it was Plaintiff doing the shooting. She purportedly stated that Plaintiff had threatened to

commit suicide earlier that evening.[1]

At that point, Defendants aver that they saw a person they believed to be Plaintiff standing in the road near Plaintiff's driveway. (Mot. Exs. C and D, McGrath and West Aff. 1, ECF No. 21.) Defendants got into their vehicles and drove toward Plaintiff's property. A motorist came up behind Defendants' vehicles as they approached the driveway. Concerned for the motorist's safety, Defendants instructed the driver to turn his vehicle around and find another route. (Mot. Ex. C, McGrath Aff. 1, ECF No. 21.) Defendants continued toward Plaintiff's driveway and shined the lights of their vehicles on the area where Plaintiff was previously standing. By that time, according to Defendants, Plaintiff was gone.

Defendants contend that they exited their vehicles. West purportedly shouted repeatedly for Plaintiff to come to the roadway. According to Defendants, West identified himself as a Sheriff's deputy at least four times. Having heard nothing, Defendants got back into their vehicles and started to back up. All of a sudden, according to Defendants, a gun shot rang out nearby to the right of their vehicles. Both officers accelerated, backing their vehicles up approximately thirty yards. (Mot. Exs. C and D, McGrath and West Aff. 1, ECF No. 21.) Defendants heard a second gun shot that sounded much closer. Believing Plaintiff was shooting at them, both officers exited their vehicles and took cover.

Within moments, Plaintiff emerged from the woods beside the roadway. Weapons drawn, Defendants ordered Plaintiff to the ground. Plaintiff allegedly yelled out, "Why don't

---

[1]In her affidavit, Plaintiff's wife does not mention whether she told the police that Plaintiff had threatened to commit suicide. She does indicate, however, that she informed officers that Plaintiff "was not acting right" because he was taking new medication. (Op. Ex. 1, Marguerita May Aff. 7, ECF No. 36-1.)

you just shoot me?"[2]  (Mot. Ex. D, West Aff. 1, ECF No. 21.)  Plaintiff laid on the ground and, in response to Defendants' questioning, stated that the gun was in his back pocket.  Defendant West retrieved the gun and handcuffed Plaintiff.  (Mot. Ex. C, McGrath Aff. 1, ECF No. 21.)

According to Defendants, Plaintiff was being uncooperative as they tried to put him in the police cruiser.  (Mot. Exs. C and D, McGrath and West Aff. 1, ECF No. 21.)  As a result, Plaintiff allegedly hit his head on the vehicle, causing a small laceration or bump on his forehead.  *Id.*  Both Defendants West and McGrath deny that McGrath struck Plaintiff in the head.

Defendants subsequently turned their reports over to the prosecutor, who secured an indictment against Plaintiff for violating Ohio Revised Code § 2903.11(A)(2), which prohibits an attempt to cause physical harm to another by means of a deadly weapon.  (Mot. Ex. B, Indictment, ECF No. 21.)  The indictment was later dismissed on speedy trial grounds on August 29, 2011.

## II.  DEFENDANTS' MOTION TO STRIKE

As a preliminary matter, Defendants' Motion to Strike Plaintiff's Sur-Reply is **DENIED**. (ECF No. 48.)  Defendants posit that Plaintiff has failed to demonstrate good cause to file his Sur-Reply, as required by Local Rule 7.2(a)(2).  Rule 7.2(a)(2) provides that Sur-Reply will not be permitted "except upon leave of court for good cause shown."  S.D. Ohio Civ. R. 7.2(a)(2). Although the Court does not condone the filing of reply memoranda without first seeking leave to do so, the circumstances here warrant a finding of good cause.  In their Reply brief, Defendants urge the Court to disregard the statement of facts section of Plaintiff's Response in

---

[2]Defendant McGrath recalls Plaintiff asking officers to shoot him after he was cuffed and in the back of the police cruiser.  (Mot. Ex. C, McGrath Aff. 1, ECF No. 21.)

Opposition to Defendants' Motion for Summary Judgment. (Reply 2, ECF No. 39.) Defendants also urge the Court to disregard other factual assertions Plaintiff makes throughout his brief. *Id.* at 3. Moreover, due to an apparent error in the manner in which Defendants filed their Reply, the Court's electronic filing system alerted Plaintiff that a response to Defendants' Reply was due in twenty-one days. (Op. to Mot. to Strike, Ex. 1, ECF No. 49.) Accordingly, Plaintiff interpreted Defendants' Reply as containing a Motion to Strike his statement of facts, and filed a response thereto. Under these circumstances, the Court declines to strike Plaintiff's Sur-Reply from the docket.[3]

## III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011

---

[3]Defendants objected to the contents of Plaintiff's statement of facts in their Reply, asserting Plaintiff was fabricating events or merely referring to the Complaint to supplement his claims. The Court does not construe Defendants' Reply as containing a formal Motion to Strike. The Court notes, however, that it is able to discern what evidence is properly supported under Rule 56 based upon the record.

WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely

disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must,

however, do more than simply show that there is some metaphysical doubt as to the material

facts.  . . .  [T]here must be evidence upon which a reasonable jury could return a verdict in favor

of the non-moving party to create a genuine dispute."  *Lee v. Metro. Gov't of Nashville &*

*Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations

omitted).  "When a motion for summary judgment is properly made and supported and the

nonmoving party fails to respond with a showing sufficient to establish an essential element of

its case, summary judgment is appropriate."  *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477

U.S. at 322–23).

## IV.  ANALYSIS

Defendants seek summary judgment on all of Plaintiff's state and federal claims.

Plaintiff's federal claims arise under 42 U.S.C. § 1983.  To plead a cause of action § 1983, a

Plaintiff must plead two elements: (1) a person acting under color of state law caused deprivation

of a right that is (2) secured by the Constitution or laws of the United States.  *Hunt v. Sycamore*

*Cmty. School Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).  To sufficiently plead the

first element, a plaintiff must allege "personal involvement" on the part of the defendant.

*Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted).  This requirement arises

because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*."  *Id.*

(citation omitted).  "A supervisor is not liable under § 1983 for failing to train unless the

supervisor either encouraged the specific incident of misconduct or in some other way directly

9

participated in it." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (internal quotation omitted).  Put another way, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Id.*

**A.       Plaintiff's False Arrest and False Imprisonment Claims**

**1.       Fifth And Fourteenth Amendments to the Constitution**

Defendants move for summary judgment on Plaintiff's claims of false arrest and false imprisonment purportedly arising from the Fifth and Fourteenth Amendments to the United States Constitution.  In his Complaint, Plaintiff alleges Defendants committed false arrest, "depriv[ing] [him] of liberty without due process of law and equal protection of the law under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. [§] 1983." (Compl. ¶ 35, ECF No. 2.)  As Defendants correctly point out, however, claims of false arrest and false imprisonment do not give rise to Fifth or Fourteenth Amendment protection.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (finding the plaintiff's reliance on due process to challenge his arrest "misplaced, . . . because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area").  Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's purported Fifth and Fourteenth Amendment claims for false arrest and false imprisonment is **GRANTED**.[4]

_____

[4]To the extent Plaintiff attempts to assert an equal protection claim arising out of an alleged false arrest or false imprisonment, it, too, fails as a matter of law.  Plaintiff has failed to offer any support, legal or factual, for his bare allegation that the alleged false arrest deprived him of his right to equal protection.  (Compl. ¶ 35, ECF No. 2.)

10

### 2.	Fourth Amendment to the Constitution

Defendants also seek summary judgment on Plaintiff's Fourth Amendment false arrest and false imprisonment claim. "'A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause [for the] arrest.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). "An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)); *see also Sykes*, 625 F.3d at 306 (citing *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002)) (basing probable cause determination on whether the facts and circumstances known to the officer at the moment of arrest were sufficient to warrant a prudent person in believing the plaintiff committed a crime).

Here, the Court concludes that no genuine issue of material fact exists as to whether probable cause supported Plaintiff's arrest. Defendants arrested Plaintiff for felonious assault, which under Ohio law encompasses an "attempt to cause physical harm to another . . . by means of a deadly weapon . . . ." O.R.C. § 2903.11(A). Based on the totality of circumstances, Defendants had probable cause to believe Plaintiff attempted to cause them harm by means of a deadly weapon. The facts and circumstances known to Defendants were that Plaintiff was "not acting right," according to his wife, because he was under the influence of medication. (Marguerita May Aff. 7, ECF No. 36-1.) He had been shooting his gun on his property earlier that evening, which caused the neighbor to call police. (Mot. 6, ECF No. 21; Mot. Exs. C and D, McGrath and West Aff. 2, ECF No. 21.) When officers approached Plaintiff's property, they

heard gunshots ring out from the darkness to the right of their vehicles, causing them to run and take cover.  *Id.* at 1.  Plaintiff thereafter emerged from the darkness, yelling out to Defendants to shoot him.  *Id.*  The totality of these circumstances were sufficient to warrant a reasonably prudent officer to believe Plaintiff attempted to shoot Defendants.  *Miller*, 606 F.3d at 248.

Plaintiff's contrary arguments are unpersuasive.  Plaintiff postulates that reasonable officers in Defendants' position could not have believed Plaintiff intended to harm them because he repeatedly asked Defendants to shoot him and because he did not make verbal threats.  (Op. 6, 7, ECF No. 36.)  To the extent Defendants subjectively believed Plaintiff intended them harm, Plaintiff contends that mere subjective beliefs cannot form the basis of probable cause.  *Id.*  Plaintiff further contends that Defendants failed to ask him if he was the one that fired the two gunshots before they arrested him.  Plaintiff's arguments fail to account for the litany of objective factors with which Defendants were presented that night, including that Plaintiff  had been shooting earlier that evening; Defendants heard gunshots ring out from the darkness near their vehicles; a gun was recovered from his pants pocket; he was under the influence of medication; his wife indicated he was "not acting right"; and he displayed unstable behavior in pleading with officers to shoot him.  These objective factors are sufficient to establish probable cause for Plaintiff's arrest and detention.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment false arrest and false imprisonment claim is **GRANTED**.

**3.      Ohio Law**

Defendants contend that summary judgment is appropriate on Plaintiff's state-law false arrest and false imprisonment claim because it is barred by the statute of limitations.  The Court

12

agrees.  Ohio law imposes a one-year statute of limitations on false arrest and false imprisonment claims.  *See* O.R.C. § 2305.11(A) ("An action for . . . false imprisonment . . . shall be commenced within one year after the cause of action accrued."); *Mayes v. City of Columbus*, 105 Ohio App. 3d 728, 746, (Ohio Ct. App. 1995) (noting that both false arrest and false imprisonment claims are subject to the one-year statute of limitations set forth in O.R.C. § 2305.11(A)).  A claim for false arrest or false imprisonment accrues on the date of arrest.  O.R.C. § 2305.11(A); *Mayes,* 105 App. 3d at 746.  Here, Plaintiff was arrested on September 27, 2009. (May Aff. 1-2, ECF No. 36-1.)  Plaintiff filed this action on September 19, 2011, nearly two years after his arrest and one year after the expiration of the statute of limitations.  (Compl., ECF No. 2.)  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's state-law false arrest and false imprisonment claim is **GRANTED**.

**B.** **Plaintiff's Excessive Force Claims**

    **1.** **Fifth, Eighth and Fourteenth Amendments to the Constitution**

Defendants seek summary judgment on Plaintiff's purported Fifth, Eighth and Fourteenth Amendment excessive-force claims.  *See* Compl. ¶¶ 39, 40, ECF No. 2 (alleging violations of the Fifth, Eighth and Fourteenth Amendments due to Defendants' purported use of excessive force). As Defendants point out, none of these three Amendments provides a basis for relief for Plaintiff's excessive-force claim.

"'In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.'"  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  The two primary sources of constitutional protection against physically

abusive governmental conduct are the Fourth and Eighth Amendments.  *Id.*  The Fourth

Amendment's prohibition against unreasonable seizures of the person applies to excessive force

claims that "'arise[] in the context of an arrest or investigatory stop of a free citizen.'"  *Id.*

(quoting *Graham*, 490 U.S. at 394).  The Eighth Amendment's bar on cruel and unusual

punishment applies to excessive force claims brought by convicted criminals serving their

sentences.  *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)).

Here, Plaintiff alleges that Defendants used excessive force during the course of his

arrest.  The Fourth Amendment is thus the appropriate vehicle for Plaintiff to challenge

Defendants' conduct.  Accordingly, Defendants Motion for Summary Judgment on Plaintiff's

purported Fifth, Eighth and Fourteenth Amendment excessive-force claims is **GRANTED**.

### 2.     Fourth Amendment to the Constitution

The Court addresses Plaintiff's excessive-force claims against Defendants West and

McGrath separately.

#### a.  Defendant West

Plaintiff asserts an excessive-force claim against Defendant West for securing his

handcuffs too tightly.  "The Fourth Amendment prohibits unduly tight or excessively forceful

handcuffs during the course of a seizure."  *Miller*, 606 F.3d at 252 (citing *Morrison v. Bd. of Tr.*

*of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).  To prevail on such a claim, the plaintiff must

prove that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored

those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the

handcuffing.  *Id.*  Here, Plaintiff has not offered any evidence that he complained about the

handcuffs being too tight or that Defendants ignored his complaints.[5]  Accordingly, Defendants'

Motion for Summary Judgment on Plaintiff's Fourth Amendment excessive force claim against

Defendant West is **GRANTED**.

### b. Defendant McGrath

The Court reaches a different conclusion, however, with respect to Plaintiff's excessive-

force claim against Defendant McGrath.  An excessive-force claim arising from an arrest is

analyzed under the "objective reasonableness" standard.  *Bennett v. Krakowski*, 671 F.3d 553,

561 (6th Cir. 2011) (citing *Graham,* 490 U.S. at 393-94).  In applying the objective

reasonableness standard, the Court must "'pay careful attention to the facts and circumstances of

each particular case, including (1) the severity of the crime at issue, (2) whether the suspect

poses an immediate threat to the safety of the officers or others, and (3) whether he is actively

resisting arrest or attempting to evade arrest by flight.'"  *Id.* (quoting *Graham*, 490 U.S. at 396).

Further, the reasonableness of force is objective, and thus "'must be judged from the perspective

of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Id.* (citing

*Graham*, 490 U.S. at 396.)

Here, Plaintiff contends that Defendant McGrath applied excessive force by striking him

in the head with his gun while he was on the ground in handcuffs.  Defendants counter that no

reasonable jury could accept Plaintiff's version of events because he was admittedly intoxicated

the night of the incident.  (Mot. 9, ECF No. 21.)  In fact, Plaintiff admitted to drinking Vokda not

only the day of the incident, but also in the three days leading up to his arrest.  (May Dep. 14:4-

---

[5]Indeed, all of the evidence related to the handcuffs, including the photographs and
descriptions of Plaintiff's wrists, originated after Defendants transferred Plaintiff to the
behavioral health center.

16, ECF No. 20-1.)  Moreover, Defendants point out that Plaintiff also admits to snorting Percocet and Oxycontin in the days leading up to his arrest.  (Mot. 9-10, ECF No. 21.)  In light of Plaintiff's intoxication, Defendants urge the Court to "adopt" their version of events, and conclude that Plaintiff sustained the injury on his forehead as a result of refusing to cooperate when Defendants attempted to put him in the police cruiser.  *Id.* at 10-11.

The Court declines, as it must, to adopt any party's version of events, and instead concludes that a genuine issue of material fact exists as to whether McGrath used excessive force during the arrest.  First, the jury must decide whether Plaintiff's version of events is unreliable in light of his intoxication.  *See F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009) ("It is [] inappropriate for a court to make credibility determinations when considering a motion for summary judgment.").  Second, Plaintiff has offered more than just his own testimony to support his excessive force claim.  For example, he submitted multiple photographs of his injuries.  (ECF No. 36-6.)  He also provided an affidavit from his wife in which she describes the injury to his head.  (Marguerita May Aff., ECF No. 36-1.)  In the affidavit, his wife also recounts that she compared the scar to a magazine from the same type of gun as Defendant McGrath's sidearm, and it matched "to a tee."  *Id.*  Further, Plaintiff submitted EMS records documenting and describing the injury to his head.  (ECF No. 36-7.)  He also provided a report and affidavit from his doctor who examined his scar and opined that it is consistent with the magazine of a gun like the one McGrath had that night.  (Wikas Aff., ECF No. 36-2.)

Accordingly, Plaintiff has provided sufficient evidence to create a genuine issue of material fact as to whether Defendant McGrath used excessive force during his arrest. Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim for

16

excessive force against Defendant McGrath is, therefore, **DENIED**.

> **3.**        **Ohio Law Assault and Battery Claim**

Defendants contend that summary judgment is appropriate on Plaintiff's state-law excessive force claims because they are barred by the statute of limitations. Again, the Court agrees the claims are time barred. Under Ohio law, excessive force claims are analyzed as assault and battery. *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 609 (6th Cir. 2006) (quoting *City of Cincinnati v. Nelson*, No. C-74321, 1975 WL 181750, *2 (Ohio Ct. App. May 5, 1975)) ("'If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery . . . ."). Ohio imposes a one-year statute of limitations on assault and battery claims. O.R.C. § 2305.111(B). When the alleged perpetrator is known, an assault and battery claim accrues on the date of the incident. *Id.* Here, Plaintiff alleges that Defendants committed state-law assault and battery during his September 27, 2009 arrest. Plaintiff filed this action on September 19, 2011, nearly two years after his arrest and one year after the statute of limitations expired. Accordingly, Defendants Motion for Summary Judgment on Plaintiff's state-law assault and battery claims is **GRANTED**.

> **4.**        **Ohio Law Negligence Claim**

Plaintiff also purports to assert a state law negligence claim for Defendants' alleged use of excessive force during his arrest. (Compl. ¶ 50, ECF No. 2.) The Court concludes that summary judgment is appropriate on this claim. Under Ohio law, conduct that could give rise to an assault and battery claim cannot serve as the basis of a negligence claim. *See Robinson v. Brown*, No. 88-07-052, 1989 WL 13584, *2 (Ohio Ct. App. Feb. 21, 1989) (quoting *Williams v. Pressman*, 69 Ohio Law Abs 470, 472; 113 N.E.2d 395 (Ohio Ct. App. 1953)) ("'An assault and

battery is not negligence, for such action is intentional, while negligence connotes an unintentional act.'").  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's state-law negligence claim is **GRANTED**.

**C.     Malicious Prosecution**

      **1.       Fourth Amendment to the Constitution**

      Defendants also seek summary judgment on Plaintiff's Fourth Amendment malicious prosecution claim.  A malicious prosecution claim provides redress for "'wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes*, 625 F.3d at 208 (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)).  "[T]he malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process.'" *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)).  To succeed on a § 1983 malicious-prosecution claim, a plaintiff must prove four elements.  First, the plaintiff must prove that a criminal prosecution was initiated against him and that the defendant "'ma[d]e, incluence[d], or participate[d] in the decision to prosecute.'" *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2006)).  Second, "because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* (citing *Fox*, 489 F.3d at 237).  Third, a plaintiff must demonstrate that, "'as a consequence of a legal proceeding,' [he] suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id.* (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (6th Cir. 2010)).  Fourth, "the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).

In a malicious prosecution claim under the Fourth Amendment, "[t]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes,* 449 F.3d at 716 (quoting *Higgason v. Stephens,* 288 F.3d 868, 877 (6th Cir. 2002)).  If, however, the grand jury proceedings are tainted by an officer's perjury, fraud, suppression of evidence, or similar bad faith act, the proceedings may not be found to conclusively establish probable cause.  *See Cook v. McPherson*, 273 Fed. App'x 421, 424 (6th Cir. 2008) (citing *Hinchman*, 312 F.3d at 202-03) (noting that a grand jury indictment will not foreclose a malicious prosecution claim when law enforcement officials made false statements or misrepresentations to secure the indictment); *See also Bakos v. City of Olmsted Falls*, 73 Fed. App'x 152, 157 (6th Cir. 2003) (finding that deficiencies in an underlying police investigation do not constitute irregularities in grand jury proceedings sufficient to undermine the conclusive effect of an indictment).

Here, Plaintiff's malicious-prosecution claim fails to withstand summary judgment. Plaintiff's prosecution was supported by an indictment, which "conclusively determines the existence of probable cause."  *Barnes*, 449 F.3d at 716.  The Court finds Plaintiff's attempt to challenge the grand jury process and, consequently, the indictment unavailing.

Plaintiff asserts that Defendants falsified their police reports, which, he contends, undermines the conclusive effect of the indictment.  Plaintiff appears to argue that Defendants falsified their reports in that they withheld mention of McGrath's alleged assault on him.  (Op. 18-19, ECF No. 36.)  The alleged assault, however, is not material to the issue of probable cause. Plaintiff provides no evidence, and indeed does not suggest, that Defendants included or withheld information material to the determination of probable cause.  In other words, even

19

assuming McGrath assaulted Plaintiff and withheld the assault from the reports, those events would not constitute an irregularity in the grand jury proceedings sufficient to undermine the conclusive effect of the indictment. *Cf. Bakos*, 73 Fed. App'x at 157. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment malicious prosecution claim is **GRANTED**.

### 2. Ohio Law

Defendants also seek summary judgment on Plaintiff's state-law claim for malicious prosecution. To succeed on a malicious-prosecution claim under Ohio law, a plaintiff must prove that (1) the defendant harbored malice in instituting or continuing the prosecution; (2) the prosecution was not supported by probable cause; and (3) the prosecution terminated in the plaintiff's favor. *Trussell v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 144; 559 N.E.2d 732 (Ohio 1990). For purposes of malicious prosecution, malice is defined as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 85; 564 N.E.2d 440 (Ohio 1990). Moreover, an indictment creates a rebuttable presumption that probable cause exists. *Sultaana v. Giant Eagle*, No. 90294, 2008 WL 2837325, *4 (Ohio Ct. App. July 24, 2008). A plaintiff can overcome the presumption by producing "substantial evidence" that the return of the indictment resulted from perjured testimony or that the proceedings were otherwise significantly irregular. *Id.* (citing *Deoma v. City of Shaker Heights*, 68 Ohio App. 3d 72, (Ohio Ct. App. 1990)).

Here, Plaintiff's state-law malicious prosecution claim fails for a number of reasons. First, as the Court has already discussed, Plaintiff's prosecution was supported by probable cause. Moreover, Plaintiff offered no evidence, much less substantial evidence, to overcome the

presumption of probable cause created by the indictment.  Accordingly, Defendants' Motion for

Summary Judgment on Plaintiff's state-law malicious prosecution claim is **GRANTED**.

**4.      Plaintiff's Claim for Abuse of Process**

Defendants seek summary judgment on Plaintiff's abuse-of-process claim.  The United

States Court of Appeals for the Sixth Circuit has not definitively determined whether a claim for

abuse of process is cognizable under § 1983.  *See Voyticky*, 412 F.3d at 667 ("This Court has

never specifically determined whether a claim for abuse of process is a cognizable constitutional

claim that can be redressed pursuant to § 1983.").  The Sixth Circuit has, however, indicated that

"[i]f such a claim is cognizable as a federal constitutional claim, . . . the elements necessary to

prove it would likely mirror those of state law."  *Id.*  This Court need not address whether an

abuse of process claim is cognizable under § 1983 because Plaintiff cannot succeed on a state-

law abuse of process claim.

Under Ohio law, a plaintiff must establish the following elements to succeed on an abuse

of process claim: (1) a legal proceeding has been set in motion in proper form and with probable

cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for

which it was not designed; and (3) direct damage has resulted from the wrongful use of process.

*Id.*  (citing *Yaklevich v. Kemp, Schaeffer, & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294; 626 N.E.2d

115 (Ohio 1994)).

Plaintiff has not offered sufficient evidence to create a genuine issue of material fact with

respect to his abuse-of-process claim.  First, Plaintiff has offered no evidence that the criminal

proceedings instituted against him were "perverted to attempt to accomplish an ulterior

purpose."  *Yaklevich*, 68 Ohio St. 3d at 298.  Nor has he offered evidence of damage resulting

from the use of process.  Indeed, Plaintiff did not respond to Defendants' request for summary

judgment on his abuse of process claim.  Accordingly, Defendants' Motion for Summary

Judgment on Plaintiff's claim for abuse of process is **GRANTED**.

**5.      Plaintiff's Civil Conspiracy Claim**

        Defendants also seek summary judgment on Plaintiff's civil conspiracy claim.  To prevail

on a civil conspiracy claim, a plaintiff must prove that the defendants (1) engaged in a "single

plan"; (2) "shared in the general conspiratorial objective" to deprive the plaintiff of his

constitutional rights, and (3) committed "an overt act . . . in furtherance of the conspiracy that

caused injury" to the plaintiff.  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Moreover, to prevail on a § 1983 civil conspiracy claim, the plaintiff must show an underlying

constitutional violation.  *Umani v. Mich. Dep't of Corr.*, 432 Fed. App'x 453, 462 (6th Cir.

2011) (citing *Wiley v. Oberlin Police Dep't*, 330 Fed. App'x 524 (2009)).

        Plaintiff's civil conspiracy claim fails as a matter of law.  Plaintiff postulates that

Defendants conspired to cover up McGrath's assault on him to make it easier to prosecute him

and to avoid compensating him for his injuries.  (Op. 17-18, ECF No. 36.)  A right to

compensation for injuries from a constitutional violation is statutory in nature, not constitutional.

*See* 42 U.S.C. § 1983 (providing the statutory basis to pursue compensation for injuries).  Thus,

the only conceivable constitutional injury that could form the basis of Plaintiff's derivative civil

conspiracy claim would be malicious prosecution.  The Court has determined, however, that

Plaintiff has not suffered a constitutional violation in this regard.  Accordingly, Plaintiff's civil

conspiracy claim necessarily fails.  *Wiley*, 330 Fed. App'x at 530 ("[A plaintiff] cannot succeed

on a conspiracy claim because there was no underlying constitutional violation that injured

22

her.").  Defendants' Motion for Summary Judgment on Plaintiff's civil conspiracy claim is,

therefore, **GRANTED**.

**6.     Plaintiff's Claims for Failure to Train or Supervise**

Plaintiff purports to assert a claim against Defendant Jenkins for failing to prevent the

wrongs allegedly committed by McGrath and West.  (Compl. ¶ 48, ECF No. 2.)  As Defendants

point out, however, the courts do not recognize a cognizable § 1983 cause of action for failure to

prevent harm.  *See Roberson v. Mich Dept. of State Police*, No. 09-14101, 2011 WL 611908, *6

(E.D. Mich. Feb. 11, 2011) (construing a "refusing or neglecting to prevent" claim as a claim for

failure to train or supervise).  Accordingly, the Court construes Plaintiff's failure-to-prevent

claim as one for failure to train or supervise.

To succeed on a failure-to-train claim under § 1983, a plaintiff must prove that (1) the

training program is inadequate to the tasks that the officers must perform; (2) the failure to train

evidences a deliberate indifference to the rights of persons with whom the officers come into

contact; and (3) the deficiency is "closely related to" or "actually caused" the injury complained

of.  *Morningstar v. Worthy*, 454 Fed. App'x 391, 406 (6th Cir. 2011) (citing *City of Canton v.*

*Harris*, 489 U.S. 378, 379 (1989)).

Here, Plaintiff has failed to adduce any evidence that would create a genuine issue of

material fact with respect to his failure-to-train claim.  He does not identify a training program

that allegedly caused him injury, much less any inadequacies therewith.  Nor does he offer

evidence of deliberate indifference or causation.  In fact, Plaintiff did not respond to Defendants'

Motion for Summary Judgment on his claim for failure to train.  Accordingly, Defendants'

Motion for Summary Judgment on Plaintiff's § 1983 claim for failure to train or supervise is

**GRANTED**.

**6.      Plaintiff's Claim for Negligent Infliction of Emotional Distress**

Plaintiff's purported state-law claim for negligent infliction of emotional distress fails as

a matter of law.  When a claim for negligent infliction of emotional distress "involves allegedly

tortious conduct of an intentional nature, negligent infliction of emotional distress does not

apply." *Haller v. Phillips*, 69 Ohio App. 3d 574, 579; 591 N.E.2d 305 (Ohio Ct. App. 1990).  In

those circumstances, "[t]he principles applicable to intentional infliction of emotional distress

[apply]." *Id.  See also Dodge v. U.S.*, 162 F. Supp.2d 873, 880 (S.D. Ohio 2001) (noting that

under Ohio law "the claim of negligent infliction of emotional distress does not apply where the

alleged tortious conduct is of an intentional nature").  Here, Plaintiff's alleged emotional distress

presumably arose from Defendants' purportedly intentional actions during his arrest.[6]  Because

intentional conduct cannot serve as the basis for a claim of negligent infliction of emotional

distress, Defendants' Motion for Summary Judgment on this claim is **GRANTED**.

**7.      Plaintiff's Claim for Intentional Infliction of Emotional Distress**

Defendants also seek summary judgment on Plaintiff's claim for intentional infliction of

emotional distress.  To prevail on a claim for intentional infliction of emotional distress under

Ohio law, a Plaintiff must prove the following:

> (1) that the defendant either intended to cause emotional distress or knew or should
> have known that the actions taken would result in serious emotional distress, (2) that
> the defendant's conduct was so extreme and outrageous as to go beyond all possible
> bounds of decency and would be considered utterly intolerable in a civilized
> community, (3) that the defendant's actions were the proximate cause of plaintiff's

---

[6]Plaintiff did not respond to Defendants' Motion for Summary Judgment on his claim for
negligent infliction of emotional distress.

24

> psychic injury, and (4) that the mental distress suffered by plaintiff is serious and of such a nature that no reasonable person could be expected to endure it.

*Rice v. Cuyahoga Cnty. Dep't. of Justice*, 970 N.E.2d 470, 482; 2005-Ohio-5337 (Ohio Ct. App. 2005). "Liability for intentional infliction of emotional distress will be found only in the most extreme circumstances." *Id.* Moreover, "'the emotional distress alleged must be serious.'" *Id.* (quoting *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78; 451 N.E.2d 759 (Ohio 1983)). "'[S]erious emotional distress' is 'emotional injury which is both severe and debilitating.'" *Id.* (quoting *Paugh*, 6 Ohio St. 3d at 78). Emotional distress is severe and debilitating if "'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Id.* (quoting *Paugh*, 6 Ohio St. 3d at 78).

Here, Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact on his claim for intentional infliction of emotional distress. First, he has failed to demonstrate that he suffers from "severe and debilitating" emotional distress. Plaintiff posits that his admission in the Appalachian Behavioral Health Center and subsequent trip to Camden Clark Hospital demonstrate that he suffered from severe and debilitating emotional distress. (Op. 28, ECF No. 36.) Plaintiff did not submit records from either of these institutions to evidence his alleged severe and debilitating emotional distress. Nor does he provide testimony as to the purported severe and debilitating nature of his symptoms. The mere fact that Plaintiff was at a behavioral center and a hospital does nothing to create a genuine issue of material fact on the question of whether he suffered the requisite serious emotional distress.

Second, Plaintiff has failed to submit evidence that the alleged emotional distress was proximately caused by Defendants' actions. Plaintiff admits that he was under the influence of drugs and alcohol at the time he was admitted to Appalachian Behavioral Health, and that he was

25

"very depressed" the night of the incident before McGrath allegedly assaulted him. (May Aff. 3, ECF No. 36-1.) In fact, according to Plaintiff, he was so depressed that he wanted Defendants to shoot him. *Id.* The only evidence Plaintiff provided to link the hospital visit to the Defendants' actions is his statement in his affidavit that he "was very depressed and upset about all of this." *Id.* at 4. This vague and ambiguous statement is insufficient to create a genuine issue of material fact, especially considering Plaintiff's admission that he was suffering from emotional problems before the incident with Defendants occurred. With respect to his visit to Camden Clark Hospital, Plaintiff merely testified in deposition that he went to the hospital "because [he] was under so much stress." (May Dep. 63:18, ECF No. 20-1.) Plaintiff has offered no evidence to link the alleged stress to Defendants' conduct.

Accordingly, Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact to support his claim for intentional infliction of emotional distress. Defendants' Motion for Summary Judgment on this claim is, therefore, **GRANTED**.

## 8. Qualified Immunity

Finally, Defendants seek summary judgment on qualified immunity grounds.[7] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

---

[7]Because the only claim to survive summary judgment is Plaintiff's Fourth Amendment claim for excessive force against Defendant McGrath, the Court need not consider Defendants' request for summary judgment on state-law immunity grounds, which is now moot.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[Q]ualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citations omitted).  The determination of whether a government official is entitled to qualified immunity involves two inquiries. *Miller*, 606 F.3d at 247.  "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?" *Id.* (internal quotation marks and citations omitted).  The Court need not consider these inquiries sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

Here, the Court concludes that qualified immunity does not apply to Plaintiff's excessive-force claim against Defendant McGrath, which is only surviving claim.  First, it is undisputed that the right to be free from excessive force was clearly established at the time of the alleged violation. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (citations omitted) ("This circuit has held that the right to be free from excessive force . . . is a clearly established right for purposes of the qualified immunity analysis.").  Second, as set forth above, viewing the facts in a light most favorable to him, Plaintiff has set forth a constitutional claim under the Fourth Amendment.  Where, as here, the reasonableness of the force utilized turns upon which party's version of the facts is accepted, a court should not grant summary judgment on qualified immunity grounds. *See Murray-Ruhl v. Passinault*, 246 F. App'x 338, 343 (6th Cir. 2007) (internal quotation marks and case citation omitted) ("[I]f the legal question of [qualified]

27

immunity is completely dependant upon which view of the facts is accepted by the jury, the district court should not grant [qualified] immunity . . . ."); *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (citations omitted) (explaining that where "qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability").

Accordingly, Defendants' Motion for Summary Judgment on qualified immunity grounds is **DENIED**. Defendants' Motion for Summary Judgment on state-law immunity grounds is **DENIED AS MOOT**.

## V.

In sum, Defendants' Motion to Strike is **DENIED**. (ECF No. 48.) Defendants' Motion for Summary Judgment on Plaintiff's claims for false arrest and false imprisonment arising under federal and state law, excessive force arising under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, assault and battery arising under state law, malicious prosecution arising under federal and state law, abuse of process, civil conspiracy, failure to train or supervise, negligent infliction of emotional distress, and intentional infliction of emotional distress is **GRANTED**. (ECF No. 21.) Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim for excessive force against Defendant West is **GRANTED**. (ECF No. 21.) Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim for excessive force against Defendant McGrath is **DENIED**. (ECF No. 21.) Defendants' Motion for Summary Judgment on grounds of § 1983 qualified immunity is **DENIED**. (ECF No. 21.) Defendants' Motion for Summary Judgment on the grounds of state-

law absolute immunity is **DENIED AS MOOT**.  (ECF No. 21.)  Thus, the only remaining claim

is Plaintiff's Fourth Amendment excessive force claim against Defendant McGrath.

     **IT IS SO ORDERED**.

Date: April 5, 2013                    _____ /s/ *Elizabeth A. Preston Deavers* _____
                                       Elizabeth A. Preston Deavers
                                       United States Magistrate Judge